# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

————————

No. 97-3283SD

————————

| | | |
|---|---|---|
| Turn Key Gaming, Inc., | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| Miller & Schroeder Investments | * | |
| Corp., | * | On Appeal from the United |
| | * | States District Court |
| Appellant, | * | for the District of |
| | * | South Dakota. |
| v. | * | |
| | * | |
| | * | |
| Oglala Sioux Tribe, | * | |
| | * | |
| Defendant - Appellee. | * | |

————————

Submitted:  October 19, 1998

Filed:  January 8, 1998

————————

Before BOWMAN, Chief Judge, RICHARD S. ARNOLD and MORRIS SHEPPARD ARNOLD, Circuit Judges.

————————

RICHARD S. ARNOLD, Circuit Judge.

Miller & Schroeder Investment Corp. appeals the District Court's denial of its application to intervene as of right under Fed. R. Civ. P. 24(a).  We hold that Miller &

Schroeder has satisfied the requirements of Rule 24(a), and we therefore reverse.

The pending lawsuit involves a dispute over a Management Agreement between Turn Key Gaming, Inc., and the Oglala Sioux Tribe, under which Turn Key was to develop, construct, and manage a gaming facility on Oglala Sioux tribal lands. All costs of constructing and equipping the project were to be advanced by Turn Key and repaid out of the revenues from operations according to a set formula. To finance the project, the principal stockholders of Turn Key agreed to borrow up to $4,000,000 from Miller & Schroeder, of which approximately $2.65 million has already been advanced. The project experienced significant cost overruns, and Turn Key sent a change order to the Tribe requesting that it approve an increase in construction costs. The Tribe refused, and Turn Key ceased work on the project. The Tribe then declared Turn Key in default and terminated the Agreement. In the Notice of Termination, the Tribe declared its intention to operate the casino for its own account without any obligation or liability to Turn Key. Turn Key filed suit alleging breach of contract and unjust enrichment. The Tribe counterclaimed for breach of contract and breach of fiduciary duty. Miller & Schroeder then filed an application to intervene pursuant to Fed. R. Civ. P. 24(a).

Miller & Schroeder's motion to intervene and proposed complaint alleged that it had a security interest in all of the property purchased with the proceeds from the loan which had been used to furnish and construct the casino, as well as in the revenues generated by the casino. Miller & Schroeder relies on a number of agreements in support of this allegation. First is a Promissory Note Master Installment Note[1] in which the Tribe agreed to pay Turn Key up to $4,000,000 from the revenues of the casino operations in accordance with the formula set out in the Management Agreement; second is a Security Agreement and Financing Statement wherein the Tribe granted a

_____

[1]This Note is in addition to the Note between Turn Key's shareholders and Miller & Schroeder, also in the amount of $4,000,000.

-2-

security interest in all furniture, supplies, inventory, and cash of the casino to Turn Key to secure payment of the Tribe's Note; and third is an agreement entitled Consent and Estoppel of the Oglala Sioux Tribe, in which the Tribe agreed to remit all payments due under its Note directly to Miller & Schroeder and acknowledged that Turn Key had assigned its rights under the Tribe's Note and Security Agreement to Miller & Schroeder.  The motion further averred that the disposition of the suit between the Tribe and Turn Key could, as a practical matter, impair or impede Miller & Schroeder's ability to protect its interest, in that the Tribe had taken possession of the casino for its own account and had denied that the Note, Security Agreement, and Consent and Estoppel were enforceable.  Finally, the motion argued that the interest of Miller & Schroeder may not be adequately represented by Turn Key, since the primary issues in the existing action concern whether the Management Agreement was broken and whether either party is entitled to damages.

Under Rule 24(a) of the Federal Rules of Civil Procedure, a party will be permitted to intervene in an action "when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties."  Fed. R. Civ. P. 24(a).  Rule 24 is to be construed liberally, and doubts resolved in favor of the proposed intervenor.  United States v. Union Electric Co., 64 F.3d 1152, 1158 (8th Cir. 1995).  An application for intervention cannot be resolved by reference to the ultimate merits of the claim the intervenor seeks to assert unless the allegations are frivolous on their face.  Oneida Indian Nation v. New York, 732 F.2d 261, 265 (2d Cir. 1984).  Review of a denial of leave to intervene as of right is de novo.  Mille Lacs Band of Chippewa Indians v. Minnesota, 989 F.2d 994, 998 (8th Cir. 1993).

Miller & Schroeder easily satisfies the first requirement under Rule 24(a).  The Tribe's Note, Security Agreement, and Consent and Estoppel clearly purport to give

Miller & Schroeder an interest in the furniture, equipment, and other personalty, as well as in the payments due Turn Key under the terms of the Note. Second, the interest that Miller & Schroeder claims in the revenues from casino operations and the security interest it claims in the property purchased with the proceeds of the loan could be impaired by the existing litigation. If the Tribe were to prevail on its affirmative defenses and counterclaims against Turn Key, Miller & Schroeder's interests would be seriously injured. It is the Tribe's position that the agreements upon which Miller & Schroeder relies are void, and that it is entitled to damages from Turn Key for breach of the Management Agreement. The disposition of the lawsuit between Turn Key and the Tribe may require resolution of legal and factual issues bearing on the validity of these agreements. It is enough under Rule 24(a) that Miller & Schroeder could be prejudiced by an unfavorable resolution in later litigation. Kansas Public Employees Retirement System v. Reimer & Koger Associates, Inc., 60 F.3d 1304, 1307-08 (8th Cir. 1995).

In addition, the interests of Miller & Schroeder may not be adequately represented by Turn Key. Miller & Schroeder claims a distinct financial and property interest in the casino and its revenues. If Turn Key prevails in its suit against the Tribe, Miller & Schroeder's interest may extend to any funds recovered by Turn Key. If the Tribe prevails against Turn Key, Miller & Schroeder may have nothing against which to assert its claim. Of course Turn Key has an incentive to pursue its claim against the Tribe, but its incentive may be different from Miller & Schroeder's. The Tribe has a counterclaim against Turn Key. The existence of this counterclaim will necessarily affect Turn Key's litigation strategy, and perhaps give it reasons to agree to a settlement that would be to Miller & Schroeder's disadvantage. Miller & Schroeder should be allowed into the case as a party to protect its own interests. We respectfully disagree with the District Court's holding to the contrary. In an opinion filed on January 4, 1999, Nos. 98-1484, 98-1577, Turn Key Gaming, Inc. v. Oglala Sioux Tribe, we have remanded the main action for further proceedings. Miller & Schroeder should be allowed to participate in those proceedings. The Tribe is free to assert all its

-4-

defenses, including sovereign immunity, on remand.

Reversed and remanded with instructions.[2]

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

---

[2]The Tribe's motion to dismiss this appeal is denied. The Tribe's motion for leave to file a reply to the opposition of Miller & Schroeder to the Tribe's motion to disqualify counsel for Miller & Schroeder is granted. The motion to disqualify counsel is denied.